UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| IN THE MATTER OF | : | CIVIL ACTION NO. 23-CV-665 |
| $189,490.00 U.S. CURRENCY | : | |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

NOW INTO COURT COMES Plaintiff, United States of America, by and through undersigned counsel, who alleges the following:

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States $189,490.00 in U.S. Currency (the "defendant property") representing moneys furnished or intended to be furnished by any person in exchange for a controlled substance, or proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate a drug offense, in violation of the Controlled Substances Act, 21 U.S.C. § 841 *et seq*. Therefore, pursuant to 21 U.S.C. § 881(a)(6), the defendant property is subject to forfeiture to the United States of America.

2. The defendant property was seized on or about February 22, 2023, on Interstate 12 near the Millerville Road exit in Baton Rouge, Louisiana, and is in the custody of the United States Marshals Service.

## JURISDICTION AND VENUE

3. The United States brings this action in rem in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a) and 21 U.S.C. § 881.

4. This Court has in rem jurisdiction over the defendant property under 28 U.S.C.

§ 1355(b). Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant in rem pursuant to Supplemental Rule G(3)(b), which the United States will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(b) & (c).

5. Venue is proper in this district, pursuant to 28 U.S.C. § 1355(b)(1), because acts or omissions giving rise to the forfeiture occurred in this district, pursuant to 28 U.S.C. § 1395.

## THE DEFENDANT IN REM

6. The defendant property consists of the following:

$189,490.00 in U.S. currency seized on or about February 22, 2023, on Interstate 12 near the Millerville Road exit in Baton Rouge, Louisiana (the "defendant property).

## FACTS

7. On or about February 22, 2023, Drug Enforcement Administration ("DEA") Task Force Officer ("TFO") Christopher Green was patrolling the I-12 corridor in East Baton Rouge Parish, Louisiana. TFO Green is employed by the East Baton Rouge Sheriff's Office ("EBRSO"). At approximately 2 p.m., TFO Green observed a Toyota SUV travelling westbound on I-12 near O'Neal Lane, following too closely behind the vehicle in front of it. Based on TFO Green's training and experience, he believed that the Toyota was travelling at an unsafe distance from the car in front of it, and, consequently, Officer Green stopped the Toyota on I-12 westbound near the Millerville Road Exit.

8. After stopping, TFO Green approached the Toyota on the passenger's side to speak with the driver. There was a female in the passenger seat. The driver handed TFO Green a passport, which identified him as Khari Greene. As the driver handed over the license, TFO Green observed Greene to be extremely nervous because his hands were shaking and his breathing was heavy. While speaking with the driver, TFO Green noticed two small, sealed dog food

2

containers in the car but observed no dogs.  TFO Green asked the driver Greene to step out of the car, and Greene complied.

9.  Officer Green explained to the driver that he stopped him because his vehicle was following too closely to the car in front of it, which was very dangerous, especially for that section of I-12.  TFO Green asked a series of questions to the driver Greene.  In response, Greene advised that he had been in Biloxi for two weeks and that he had driven there in a rental car and dropped it off there.  Greene further advised that the female occupant had driven from Texas to Biloxi about three days ago, that they were driving from Biloxi to Missouri City, Texas, that his license was suspended, and that he had unpaid tickets.  He also stated that the female occupant's name was LuAnne, that she was his girlfriend, and that the Toyota belonged to her but that she spoke Chinese and could not speak English, meaning they could only communicate through a translation application.  TFO Green found some of these answers to be odd, particularly that Greene had driven to Biloxi in a rental car and that Greene and the female were in a relationship but could not speak the same language.  Additionally, through TFO Green's experience, he believed that some of these answers were odd because, when Greene answered, he paused several times, his voice pitch was raised when he spoke, and it appeared that he was holding his breath in fear.

10.  TFO Green told the driver Greene that he would also have to speak with the female to confirm that she had a valid driver's license and insurance on the Toyota.  This appeared to make Greene very uneasy because he stopped TFO Green and attempted to re-engage him in conversation about his own driver's license.

11.  TFO Green then went back to his patrol unit to retrieve his cell phone to use an application called "Google Translate" in the event he had difficulty communicating with the

female passenger. Also, believing that criminal activity was afoot, he radioed EBRSO Sgt. Jesse Hale and requested his assistance.

12. TFO Green then returned to the Toyota and began speaking with the female, using the Google translation application on his phone. The female advised that she did not speak English. The female provided her Texas driver's license, which identified her as Yanyang Ge, different from the name LuAnne that the driver Greene said was her name. Ge also provided proof of insurance, which revealed that she was the owner of the Toyota. When asked where they were coming from, Ge initially said Houston, then eventually stated Florida. When asked how long, Ge stated she was there for one day to see friends. These responses were different from Khari Greene's answers. When asked the name of the driver, Ge hesitated and eventually said she could not say his name. And, when asked if the driver traveled with her, she typed "no." TFO Green believed the conversation with Ge was odd and an attempt to avoid any real communication with him and an attempt to avoid giving any substantive information about the origin of the trip, the destination of the trip, the duration of travel, or her relationship with the driver. In TFO Green's experience, these are the topics where individuals engaged in criminal activity are often the most deceptive.

13. After speaking with Ge and based on his suspicions, TFO Green returned to the driver Greene and told him that Ge did not know his name and did not seem to know what they were doing. Greene responded that she knew him by his nickname "K." When TFO Green asked again where he was coming from, the driver Greene said they stopped in Biloxi but had been in Florida for two weeks. Greene stated that he was a paralegal and worked for himself and that Ge worked at a massage parlor in Texas. TFO Green advised that he was going to check for any

4

outstanding warrants and asked Greene if he had any previous arrests; Greene replied that he had been arrested in 2005 for assault.

14. TFO Green then returned to his patrol unit to perform checks on the driver, the female occupant, and the vehicle. While conducting these checks, TFO Green asked Sgt. Hale to have his K-9 perform a sniff of the vehicle because of his suspicions of criminal activity. TFO Green suspected that there was criminal activity occurring based on his years of experience in law enforcement, including working Interstate Criminal Enforcement. TFO Green's suspicions of criminal activity were based on the totality of the circumstances, which included the unusual nervousness of both the driver and passenger, the suspected deception of the driver from his answers about his itinerary and his relationship with the passenger, the avoidance from the passenger on their itinerary and her relationship with the driver, the two dog food containers in the car without any dogs present, and because the origin and destination areas were known drug source/use areas.

15. Sgt. Hale's K-9 Dakota performed a dog sniff around the exterior of the Toyota. K-9 Dakota is a certified narcotics detection K-9 and certified via USK9 Unlimited, NNDDA, and USPCA. K-9 Dakota indicated a positive alert to a narcotics odor on the vehicle.

16. After conducting checks on the driver, the female occupant, and the vehicle, TFO Green found an extensive criminal history for the driver, Khari Greene, many for drug offenses.

17. TFO Green returned to the driver Greene and advised him of his Miranda rights; Greene replied that he understood. TFO Green told Greene that the K-9 had alerted positively to a narcotics odor on the vehicle and, consequently, the officers would conduct a search of the vehicle. Greene attempted to argue the K-9 alert. When TFO Green asked Greene if he had any large amounts of money in the car, Greene replied that he did not. When TFO Green asked about

the dog food containers in the car, the driver Greene said they belonged to the dog. TFO Green told Greene that he believed that there was a large amount of money in the Toyota.

18. During the search of the Toyota, the officers found a total of seven bundles of U.S. currency in two suitcases, located in the liners of the suitcases. The cash was rubber-banded and wrapped into bundles. When the officers opened the two empty sealed dog food containers, they had a strong smell of some type of perfume or cover scent.

19. Once the U.S. currency was found, the officers asked the driver Greene and the passenger Ge if they had any knowledge about the cash. Neither the driver nor the passenger made any statement.

20. Based on his training and experience, TFO Green believed that this cash was the proceeds of drug trafficking. Therefore, the cash was seized. Khari Greene and Yanyang Ge were issued a DEA-12 form as a receipt for the cash.

21. The cash was transported to the Baton Rouge DEA office where TFO Green's K-9 Jax conducted a dog sniff of the cash. K-9 Jax is a certified narcotics detection K-9, and certified via USK9 Unlimited, NNDDA, and USPCA. K-9 Jax indicated a positive alert to a narcotics odor on the cash.

22. The defendant property consisted of approximately four thousand one hundred eighty-three (4,183) bills totaling $189,490.00 in U.S. Currency. The denominations of the defendant currency were approximately 1,220 $100 bills, 329 $50 bills, 2,507 $20 bills, 57 $10 bills, 65 $5 bills, and 5 $1 bills. Based on the above, approximately sixty-three (63%) percent of the bills were $20 and below.

23. Based on TFO Green's training and experience, and together with numerous factors including the two positive dog alerts, the large amount of rubber-banded and bundled cash, hiding

the cash in innocuous places such as the suitcase liners to avoid detection, the high percentage of low-denomination bills, the car occupants' nervous behavior, and the occupants' conflicting stories, the defendant property is consistent with the proceeds of narcotics trafficking.

## LAW

24. 21 U.S.C. § 881(a)(6) provides that the following shall be subject to forfeiture to the United States:

> "All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

## BASIS FOR FORFEITURE

25. The defendant property is subject to forfeiture, pursuant to 21 U.S.C. § 881(a)(6), because it represents moneys furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate a drug offense, in violation of the Controlled Substances Act, 21 U.S.C. § 841 *et seq*.

## CLAIM FOR RELIEF

26. Based on the facts set forth and incorporated herein, the defendant property should be properly condemned and forfeited to the United States of America pursuant to 18 U.S.C. § 881(a)(6).

WHEREFORE, the plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the defendant property; that notice of this action be given to all persons known or thought to have an interest in or right against the defendant property; that the defendant property be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs

and disbursements in this action; and that the Court award the plaintiff such other and further relief as this Court deems proper and just.

          UNITED STATES OF AMERICA, by

          RONALD C. GATHE, JR.
          UNITED STATES ATTORNEY

          /s/ J. Brady Casey
          J. Brady Casey, LBN: 24338
          Assistant United States Attorney
          777 Florida Street, Suite 208
          Baton Rouge, Louisiana 70801
          Telephone: (225) 389-0443
          Fax: (225) 389-0685
          E-mail: john.casey@usdoj.gov

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

IN RE: :
 :
IN THE MATTER OF : CIVIL ACTION NO. 23-CV
$189,490.00 U.S. CURRENCY :

## VERIFICATION

I, Jason Dohm, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration, that I have read the foregoing <u>Verified Complaint In Rem</u> and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except that those matters not within my own personal knowledge are alleged on information and belief, and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with other officers, as a Task Force Officer with the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated this 2nd day of August, 2023.

JASON DOHM
Drug Enforcement Administration